**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-CR-446-1 (BAH)** |
| | : | |
| **FRANCISCO ROCHE,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this sentencing memorandum to assist the Court's consideration of sentencing in this case. For the reasons outlined below and in consideration of the factors set forth in 18 U.S.C. § 3553(a), the Government requests that the Court impose a sentence of 120 months' incarceration, to be followed by five years of supervised release.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Offense Conduct

#### a. PCP Distribution Conspiracy

As summarized in the Statement of Offense in Support of Defendant's Guilty Plea (ECF No. 35 at 3-7) and the Presentence Investigation Report ("PSR") (ECF No. 47, ¶¶ 17-28), the defendant's guilty plea acknowledged a criminal scheme that spanned multiple months and involved the sale of distribution-level quantities of liquid PCP in a residential neighborhood in the District of Columbia. From at least December 2023 until May 2024, Mr. Roche conspired with Tesharia Diggs to distribute PCP to customers and associates in the Petworth community, including in and around the 600 and 700 blocks of Rock Creek Church Road NW and Otis Place NW. PSR ¶ 17. During the conspiracy, the two were involved in several sales of PCP to law

enforcement confidential informants ("CIs"). After Mr. Roche was arrested for his illegal activities and while detained, he actively coordinated with his co-conspirator to continue to distribute PCP. Specifically:

On December 4, 2023, Mr. Roche sold approximately eight ounces of liquid PCP to a CI in exchange for $1,600; he packaged the PCP for sale in a baby bottle placed inside of a shipping envelope. PSR ¶ 19.

On December 13, 2023, Mr. Roche sold approximately five ounces of PCP, four zips of a powdery substance, and a plastic twist bag of a white rock-like substance to a CI in exchange for $2,400; in addition to confirming that the liquid mixture contained PCP, DEA testing also determined that the powdery substance contained fentanyl, and the white rock-like substance contained cocaine base. Mr. Roche packaged the PCP for sale in a baby bottle placed inside of a mylar bag of the type used to store marijuana. PSR ¶ 24.

On December 22, 2023, law enforcement arrested Mr. Roche at his residence on Colorado Avenue NW in the District of Columbia and executed a search warrant for his residence and vehicle. PSR ¶ 25. In his residence, law enforcement found drugs and indicia of drug distribution: a bag containing numerous liquid drippers—a tool that may be used to transfer liquids such as PCP from one container to another. *Id.*



***Bag Containing Liquid Dippers Recovered from Mr. Roche's Residence***

Inside of his vehicle – a black Dodge Durango SUV – law enforcement found an Ocean Spray Cran-Apple juice bottle containing approximately two ounces of liquid PCP, which also contained small tobacco flakes in the liquid. PSR ¶¶ 25-26. In addition, law enforcement found a pack of Newport cigarettes in the vehicle, which are typically used to make and distribute PCP "dippers," which are cigarettes that have been dipped in liquid PCP for distribution and use. *Id.* ¶ 26.

 



***PCP and Newport Cigarettes Recovered from Mr. Roche's Vehicle***

Mr. Roche was undeterred by his arrest and detention. Beginning on December 28, 2023, he and Ms. Diggs communicated several times – via numerous recorded jail calls, video visits, and text messages – about continuing to distribute PCP while Mr. Roche was detained at the District of Columbia Department of Corrections Central Detention Center ("D.C. DOC"). PSR ¶ 27. The crux of these discussions was that Ms. Diggs would sell PCP to buyers for Mr. Roche, and covered

topics such as how to mix, measure, and package PCP for distribution; obtaining PCP distribution supplies and packaging; obtaining additional quantities of PCP from suppliers; transferring PCP to buyers; how to price PCP; and how to receive payment for PCP sales. PSR ¶ 28.

Leveraging Mr. Roche's instruction and guidance, on January 11, 2024, Ms. Diggs sold approximately one ounce of liquid PCP – packaged in a baby bottle – to a CI for $300. Ms. Diggs discussed this sale with Mr. Roche on recorded D.C. DOC communications before, during, and after the transaction. During those discussions, Mr. Roche provided her with information and instructions about how to make the sale, and also discussed the sale with her and the CI on a three-way call via Ms. Diggs' phone. Statement of Offense in Support of Defendant's Guilty Plea, ECF No. 35 ¶ 10.

On January 23, 2024, Ms. Diggs sold approximately eight ounces of PCP – again, packaged in a baby bottle – to a CI in exchange for $1,600. *Id*. ¶ 11. As with the prior sale, Ms. Diggs discussed this illegal transaction with Mr. Roche on recorded D.C. DOC communications before, during, and after the sale, during which Mr. Roche provided the defendant with instructions. *Id*. During that same month, Ms. Diggs and Mr. Roche distributed PCP to at least two other subjects. *Id.* ¶ 12.

On May 24, 2024, law enforcement arrested Ms. Diggs at her Petworth residence and executed a search warrant at the location. Law enforcement recovered a plastic bag containing approximately two ounces of PCP from a small refrigerator in her bedroom. *Id*. ¶ 13.

### b. December 2023 Firearm Recovery

Separate from the distribution conspiracy detailed above, on December 7, 2023 Metropolitan Police Department ("MPD") officers on patrol near the intersection of 12th Street NW and H Street NW in downtown Washington, D.C. observed a black handgun located in the

front center console of a black 2018 Dodge Durango vehicle. PSR ¶ 21. A short time later, officers observed Mr. Roche and another person approach the vehicle; Mr. Roche walked up to the driver's door of the vehicle, unlocked it, and began to enter the vehicle before being stopped by officers. *Id.* ¶¶ 21-22. Officers subsequently recovered the firearm from the front center console of the vehicle, which was determined to be a chambered black Ruger LC9 9mm caliber pistol bearing serial number 324-049T3. *Id.* ¶ 22. In addition to the chambered bullet, there were an additional seven rounds of 9mm ammunition in the magazine. *Id.*

Officers recovered the key fob for the vehicle from Mr. Roche's person. *Id.* ¶ 23. In addition to the loaded firearm inside of the vehicle, officers also found Mr. Roche's work identification card and the Maryland registration certificate for the vehicle, which revealed that the vehicle was registered in the defendant's name and in the name of another individual. *Id.*



*Firearm in the Vehicle's Center Console Cupholder*



***Firearm Recovered from Mr. Roche's Vehicle***

At the time of this offense on December 7, 2023, Mr. Roche had been previously convicted of a crime punishable by imprisonment for a term exceeding one year. *Id*. He was also on probation for three separate felony cases in the Superior Court for the District of Columbia, two of which involved his illegal possession or use of a firearm. *Id*. ¶¶ 66, 68-69.

## II. <u>Post-Arrest Procedural History</u>

On December 19, 2023, a federal grand jury returned a two-count Indictment charging Mr. Roche with two offenses related to the December 7, 2023 incident: (1) Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1); and (2) Unlawful Possession of a Firearm (Prior Crime of Violence), in violation of 22 D.C. Code §§ 4503(a)(1) and (b)(1) (hereafter "the Firearm Counts"). Mr. Roche was arrested on December 22, 2023.

On May 15, 2024 a superseding indictment charged Mr. Roche, and his co-conspirator Ms. Diggs, in Count 1 for conspiring to distribute phencyclidine (PCP) from in or around December 2023 to the present, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(C), and in Counts 14 and 15 for distributing PCP on two dates in January 2024, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. *See* ECF No. 15. The superseding indictment further charged

Mr. Roche with the Firearm Counts (Counts 9[1] and 10[2]) and with:

- Distributing 100 grams or more of PCP on four different dates in October, November, and December 2023, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iv) (Counts 1, 6, 8, and 11);

- Distributing PCP on one date in November 2023, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 4);

- Distributing fentanyl on four separate different dates in October, November, and December 2023, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 2, 5, 7 and 12); and

- Distributing cocaine base on one date in December 2023 in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 13).

On February 14, 2025, Mr. Roche pleaded guilty to Counts 1 and 9 of the Superseding Indictment pursuant to a plea agreement. *See* February 14, 2024 Minute Entry; ECF Nos. 34-35.

## ANALYSIS

### I.  <u>Relevant Sentencing Considerations</u>

The Court should fashion a sentence based on the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 50 (2007). These factors include: (1) the Sentencing Guidelines and related Sentencing Commission policy statements; (2) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed

---

[1] Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

[2] Unlawful Possession of a Firearm (Prior Crime of Violence), in violation of 22 D.C. Code § 4503(a)(1).

correctional treatment; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

Though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). Indeed, the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

## II.   Defendant's Sentencing Guidelines Calculation

All parties agree that the defendant's Criminal History Category is VI[3]. PSR ¶ 72. All parties also concur with Probation's assessment of the applicable Sentencing Guidelines. *See generally* PSR ¶¶ 34-45, 83. Namely, that the defendant's base offense level for Count 1 of the Superseding Indictment is 26 under U.S.S.G. §2D1.1(a)(5) and (c)(7), as the amount of PCP distributed throughout the course of the Conspiracy was more than 400 grams but less than 700 grams. The parties further agree that the base offense level for Count 9 is 20 under U.S.S.G. §2K2.1(a)(4)(A). Pursuant to U.S.S.G. §3D1.4, Count 1 is assigned one unit and Count 9 is assigned one-half unit, which results in one additional point added to the offense level for Count

---

[3] As reflected in the plea agreement, the Government estimated that the defendant has 23 criminal history points, which also results in Criminal History Category VI.

1. PSR ¶¶ 50-52. As a result, the parties agree that the total combined offense level is 27. PSR ¶ 53.

The parties further agree that a 2-level reduction is appropriate under U.S.S.G. § 3E1.1(a) and an additional 1-level reduction is appropriate under U.S.S.G. § 3E1.1(b) due to the defendant's acceptance of responsibility and timely notice of his intent to plead guilty. As a result, the total offense level is 24, which at Criminal History Category VI translates to a Guidelines range of 100-125 months of imprisonment.

## III.    Sentencing Recommendation

Consistent with the Plea Agreement, the Government respectfully submits that the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a) support a Guideline sentence in this case of 120 months of imprisonment for Counts 1 and 9. The Government further recommends that the Court impose a five-year term of supervised release to support and supervise the defendant's reentry following his term of imprisonment.

### A.  Nature of the Offense

The nature of Mr. Roche's conduct in connection with the offense demonstrates a complete disregard for both the rule of law and safety of the community. Not only did the defendant actively conspire to distribute large quantities of PCP over a period of several months, he actively coordinated with and coached his co-defendant, Ms. Diggs, to continue doing so following his arrest on December 22, 2023 and while he was detained at D.C. DOC. Separately, the defendant possessed a loaded firearm in public, despite being on probation for three prior District of Columbia felony cases involving four separate felony convictions.

Mr. Roche was undeterred by the layers of danger his actions posed to the community. He packaged PCP in baby bottles (PSR ¶¶ 20, 24) and sold PCP in the vicinity of the 600 block of

Rock Creek Church Road NW. *Id.* This location is a residential area in the Petworth neighborhood of Washington, DC, not far from Bruce-Monroe Elementary School and Park View Recreation Center, and across the street from a non-profit organization that primarily supports single mothers. His actions in dealing a dangerous drug[4] in large quantities in this community reflects an ongoing criminal decision to continue their illegal PCP distribution conspiracy without regard for the rule of law or the safety and well-being of others in the community. His separate decision to possess a chambered, loaded gun in public created its own acute risk to the community. *See United States v. Gassaway*, No. 21-cv-550, 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public," and collecting cases.).

What is more, Mr. Roche guided Ms. Diggs to continue to sell PCP while he was detained at D.C. DOC. Less than a week after his arrest, the two discussed efforts to continue to distribute PCP, including that Ms. Diggs would sell PCP to buyers for Mr. Roche. PSR ¶ 27. These conversations were captured on numerous recorded jail calls, video visits, and text messages, including discussions about specific sales of PCP before, during, and after the respective transactions. PSR ¶¶ 27-28; Statement of Offense ¶¶ 9-11. In one instance, Mr. Roche discussed

---

[4] As the Government noted in its memorandum in support of pretrial detention for Defendant Tesharia Diggs (ECF No. 20), this District Court has repeatedly recognized that PCP is a dangerous illegal drug. *See United States v. Ware*, 2009 WL 939632, at *2 (D.D.C. Apr. 7, 2009) (J. Lamberth) (noting that PCP is "a drug that is a serious danger to the community" in finding that a defendant who conspired to sell PCP and who in fact did so was a danger to the community); *see also United States v. Taylor*, 289 F. Supp. 3d 55, 72 (D.D.C. 2018) (J. Moss) (noting that PCP is "a particularly dangerous illegal drug"); *United States v. Gage*, 2018 WL 6201059, at *5 (D.D.C. Nov. 28, 2018) (J. Collyer) (citing *Ware* and *Taylor* for the proposition that PCP is particularly dangerous); *United States v. Scott*, 2019 WL 2526401, at *5 (D.D.C. June 19, 2019) (J. Collyer) (noting the same).

a PCP sale with a CI on a three-way call via Ms. Diggs' phone. Statement of Offense ¶ 10. The defendant's decision to do so under these circumstances represents a brazen disregard for the law.

For these reasons, a sentence of 120 months' imprisonment followed by a five-year term of supervised release is warranted.

**B. Defendant's History and Characteristics**

In addition to the instant conduct, Mr. Roche has an extensive criminal history that spans well over a decade. That history includes prior firearms and drug offenses, as well as violent conduct.

Mr. Roche's commission of the instant offenses show that he has been undeterred by his past encounters with the criminal justice system. To wit, he possessed a loaded firearm in a public area despite a history of serious firearms-related offenses. Two of those cases (2018 CF2 017690 and 2020 CF2 002575) involved his illegal possession or use of a firearm after he was previously convicted of other felony offenses in Maryland in 2007 and 2008. PSR ¶¶ 62, 63, 66, 68.

In Case No. 2018 CF2 017690, Mr. Roche was convicted of (1) Attempted Assault with a Deadly Weapon (Firearm) and (2) Carrying a Dangerous Weapon Outside of Home or Business (Firearm), on April 26, 2021. PSR ¶ 66. The offenses in that case involved an argument between the defendant and a victim, during which the defendant retrieved a firearm from his vehicle, followed the victim into their residence, and pointed the firearm at the victim (and other residents) while making threats. *Id*.

Further, much like his conduct in this case, Mr. Roche's criminal history is reflective of his disregard for the rule of law. This history also bears an unfortunate resemblance to the conduct to which he has pleaded guilty here. Specifically, while on pretrial release for the aforementioned

2018 case, Mr. Roche possessed a loaded firearm, and subsequently was arrested, charged, and convicted for possessing PCP. PSR ¶¶ 66, 69.

As with the other factors, the defendant's extensive criminal history counsels towards the guidelines sentence recommended by the Government.

### C.  The Need for the Sentence Imposed

The Government's recommended sentence is also justified by the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2). A sentence of 120 months of incarceration and five years of supervised release does just this.

As discussed above, his criminal actions were serious and dangerous to the community. Mr. Roche was undeterred by his prior terms of incarceration and contacts with the criminal justice system, and in connection with this matter, Mr. Roche displayed wanton disregard for the rule of law by actively coaching his co-conspirator to continue their criminal conduct while he was detained. A 120-month sentence acknowledges this fact. Further, the recommended sentence would also serve to protect the public from additional crimes by Mr. Roche while he is punished and rehabilitated, as well as serve to provide adequate deterrence from Mr. Roche committing other offenses going forward. *Id.* § 3553(a)(2)(B)-(C). Moreover, the recommended sentence would support general deterrence for others who may consider engaging in similar unlawful conduct. *Id.* § 3553(a)(2)(B).

The recommended sentence would also provide the defendant ample time to pursue educational and vocational training, as well as participate in other programs such as substance

abuse and other counseling. *See* 18 U.S.C. § 3553(a)(2)(D). These commitments will hopefully lead Mr. Roche to a law-abiding life after his release.

The Government also recommends that the defendant be sentenced to five years of supervised release following his release from the term of imprisonment in this case. The Government believes that a five-year term of supervised release after imprisonment would provide necessary support for the defendant's continued rehabilitation, and supervision of his reentry.

## CONCLUSION

For the reasons described above, the Government respectfully recommends that the Court impose a Guideline sentence of 120 months of imprisonment, to be followed by five years of supervised release.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney


By:    */s/ Tiffany V. Wynn*
TIFFANY V. WYNN
Special Assistant United States Attorney
D.C. Bar No. 1011424
THOMAS G. STRONG
Assistant United States Attorney
N.Y. Bar No. 4958658
601 D Street NW
Washington, DC 20530
202-252-7504
tiffany.wynn2@usdoj.gov
thomas.strong@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on June 6, 2025.


By:    */s/ Tiffany V. Wynn*
          Tiffany V. Wynn
          Special Assistant United States Attorney